IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-698-FL

KELLIE SHARP,            )
                          )
        Plaintiff,     )
                          )
        v.            )      **MEMORANDUM &**
                          )      **RECOMMENDATION**
NANCY A. BERRYHILL,[1]  )
Acting Commissioner of Social  )
Security,             )
                          )
        Defendant.    )

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Kellie Sharp ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE #16] be granted, Defendant's

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security as a defendant to this action. Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

Motion for Judgment on the Pleadings [DE #20] be denied, and the Commissioner's decision be remanded for further proceedings.

## STATEMENT OF THE CASE

Plaintiff protectively applied for a period of disability and DIB on October 2, 2012, with an alleged onset date of September 21, 2010. (R. 24, 115, 208–12.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 24, 132, 145, 154.) On April 2, 2015, a hearing was held before Administrative Law Judge ("ALJ") Wanda L. Wright, who issued an unfavorable ruling on May 27, 2015. (R. 24, 48.) The Appeals Council denied Plaintiff's request for review on May 27, 2016. (R. 1.) Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I.    Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to

re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.    Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since September 21, 2010, the alleged onset date. (R. 26.) Next, the ALJ determined Plaintiff had the following severe impairments: "degenerative disc disease, history of seizure disorder, history of lupus, history of pulmonary embolism, history of tachycardia, asthma, diabetes mellitus, obesity, pain associated with physical and psychological disorders, depression, and generalized anxiety disorder, and posttraumatic stress disorder." (*Id.*) The ALJ found Plaintiff's knee injury to be a non-severe impairment. (R. 26–27.)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 27–28.) The ALJ analyzed Listings 1.04, 3.03, 4.05, 11.02, 12.06, and 14.02. (*Id.*)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; push and pull other than shown for lift and carry; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] requires a sit/stand option at 30-minute intervals throughout the workday. [Plaintiff] should avoid concentrated exposure to moving machinery, hazardous machinery, and unprotected heights. [Plaintiff] cannot drive a motor vehicle. [Plaintiff] should avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, gases, and poorly ventilated areas.

[Plaintiff] should avoid concentrated exposure to excessive noise. [Plaintiff] can do simple, routine, repetitive tasks with occasional interaction with the public.

(R. 29.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms "not entirely credible." (R. 30.) At step four, the ALJ concluded Plaintiff was not able to perform her past relevant work as a general duty nurse or nurse's assistant. (R. 46.) At step five, the ALJ concluded, based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. 46–47.) Specifically, the ALJ found Plaintiff capable of performing work as a photocopying machine operator or routing clerk. (R. 47.)

## IV.    Plaintiff's Arguments

Plaintiff contends the ALJ erred by (1) insufficiently explaining Plaintiff's RFC; and (2) insufficiently explaining her finding that Plaintiff's testimony about her various symptoms and limitations was not fully credible. Plaintiff's first argument has merit, and therefore, the undersigned recommends that the matter be remanded to the Commissioner.

### A.    RFC

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 404.1545(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other

requirements of work. 20 C.F.R. § 404.1545(a)(4). It is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p, 1996 WL 374184, at *7.

In practice, formulating the RFC requires that an ALJ conduct a "function-by-function analysis" of a claimant's work abilities before expressing any conclusions about limits on the RFC. *Mascio v. Colvin*, 780 F.3d 632, 635–36 (4th Cir. 2015); SSR 96–8p, 1996 WL 374184, at *3. This function-by-function analysis requires an ALJ to discuss a Plaintiff's ability to perform work-related actions listed in 20 C.F.R. § 404.1545(b)–(d). *See Mascio*, 780 F.3d at 636 n.5 (requiring ALJ to complete function-by-function analysis for Supplemental Social Security Income claims by discussing the functions listed in 20 C.F.R. § 416.945(b)–(d)).

Crucially, the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). In other words, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). If necessary, an ALJ must "explain how any material inconsistencies or ambiguities in

the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7.

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96–5p, 1996 WL 374183, at *3.[2] As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R § 404.1527(b)–(c); SSR 96–8p, 1996 WL 374184, at *7. Medical opinions are "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

In sum, an ALJ is required to explain his analysis and evaluation when assessing a claimant's RFC because a reviewing court "cannot fill in the blanks for the ALJ." *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017) (reversing and remanding a disability benefits denial because the ALJ failed to document properly application of mental impairment special technique in RFC assessment).

Plaintiff makes three assignments of error about the RFC. First, Plaintiff argues that the ALJ erred by not explaining how her finding that Plaintiff suffered

---

[2] This agency ruling was rescinded March 27, 2017, for claims filed on or after that date. 82 Fed. Reg. 15263 (Mar. 27, 2017).

from moderate restriction regarding concentration, persistence, and pace was accounted for in the RFC. (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #17] at 11–13.) In response, the Commissioner argues that the ALJ "did address mental limitations" in the RFC and related vocational hypotheticals, and therefore, the ALJ sufficiently accounted for her findings in the RFC and related vocational hypotheticals. (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #21] at 19.) Because the ALJ committed the same error as that identified by the Fourth Circuit in *Mascio*, the undersigned recommends remand.

The Commissioner argues that "*Mascio* did not adopt a *per se* rule requiring remand when the ALJ finds at steps two and three moderate difficulties in concentration, persistence, or pace and finds an RFC for simple, repetitive, routine tasks." (Def.'s Mem. Supp. Mot. J. Pldgs. at 19.) That is correct. But it is only partially correct that the reason for remand in *Mascio* was "the ALJ's complete failure to include in the hypothetical question to the [Vocational Expert] any mental limitations." (*Id.*) Rather, part of the reason for remand in *Mascio* was the lack of an explanation as to why the claimant's "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [the claimant]'s residual functional capacity." *Mascio*, 780 F.3d at 638. The Fourth Circuit stressed the importance of this explanation in light of its holding that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011))

(internal quotation marks omitted). The Fourth Circuit held that a claimant's limitation regarding concentration, persistence, or pace might not affect her ability to work, and thus could be appropriately excluded from the RFC assessment and related vocational hypotheticals; however, it is incumbent on the ALJ to explain why such a limitation does not affect a claimant's ability to work. *Id.*

Here, the ALJ found Plaintiff moderately limited regarding concentration, persistence, or pace. (R. 28, 45–46.) The ALJ did not explain how this limitation impacts the RFC, though. That is what *Mascio* requires. Moreover, that failure to explain cannot be deemed harmless because, as Plaintiff points out, Plaintiff's representative posed hypotheticals to the Vocational Expert that may have accounted for this limitation, and the Vocational Expert testified that such restrictions in the RFC would eliminate available jobs. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 12; R. 97.) The Commissioner argues, based on *Crow v. Colvin*, No. 2:14-CV-45-BO, 2015 WL 7455775 (Nov. 23, 2015), that the ALJ "discussed and relied on the evidence of record showing that [Plaintiff]'s limitations in concentration, persistence, or pace did not affect her ability to work beyond a limitation to simple, routine, and repetitive tasks with only occasional interaction with the public." (Def.'s Mem. Supp. Mot. J. Pldgs. at 20.)

This case is distinguishable from *Crow*. In *Crow*, the court explained that the evidence cited by the ALJ supported the finding regarding the claimant's moderate concentration, persistence, or pace limitation. *Crow*, 2015 WL 7455775, at *2. Here, the ALJ specifically states that she assigns "significant" weight to the opinions of the

state psychological consultants except that she disagrees with their opinions that Plaintiff is only mildly limited as regards concentration, persistence, or pace, and instead, finds that Plaintiff is moderately limited in this area. (R. 45–46.) This leaves the court to wonder why the ALJ did this, and in turn, to wonder why this finding— important enough to vary from medical opinions that the ALJ otherwise assigned significant weight to—was not discussed in the RFC assessment. The ALJ's failure to explain how the concentration, persistence, or pace limitation was accounted for in the RFC that renders this aspect of the ALJ's decision impervious to meaningful judicial review.

Second, Plaintiff argues that the ALJ erred by failing to engage in a "complete discussion" about Plaintiff's ability to interact with supervisors and coworkers. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 13–14.) Specifically, Plaintiff contends the ALJ's decision to restrict the RFC to include only interaction with supervisors and coworkers in a work setting "with no demand for extensive social interaction" was error, absent further explanation about Plaintiff's ability to interact with supervisors and coworkers "at all." (*Id.*)

The ALJ's RFC restriction to jobs with only "occasional interaction with the public" is supported by substantial evidence and does not need further explanation to survive judicial review. The ALJ assigned significant weight to the state psychological consultants' opinions, including their opinions that Plaintiff has social limitations that limit her to accepting directions from supervisors and maintaining adequate relationships with coworkers in settings with no demand for extensive

social interaction. (R. 45.) The social interaction restriction in the RFC is supported by substantial evidence, namely the consultants' opinions about Plaintiff's work-related social limitations. (R. 111, 129.) Plaintiff questions why the RFC did not limit her social interaction with supervisors and coworkers. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 14.) However, a typical working relationship does not require *extensive* social interaction between supervisors and employees or amongst coworkers, and Plaintiff has not demonstrated that the jobs she was found fit to perform require social interaction to such an extent. Accordingly, this assignment of error should be overruled.

Third, Plaintiff contends that the ALJ erred by not explaining the effect of the limitations in her daily living activities on her ability to work. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 15–16.) While Plaintiff is correct that the ALJ failed to provide a detailed assessment of her daily living activities (*id.* at 16), Plaintiff neither challenges the ALJ's finding that her limitations are mild nor argues that the outcome would have been different had this explanation been more fully flushed out (*id.*). The undersigned agrees with the Commissioner that this error was harmless, and in any event, it is unlikely to be repeated on remand. Therefore, this assignment of error should be overruled.

In sum, *Mascio* and SSR 96–8p require an explanation as to why a particular finding regarding Plaintiff's functional abilities with respect to concentration, persistence, or pace translates or does not translate into an RFC restriction. Here, the ALJ failed to "build an accurate and logical bridge" between the evidence and her

findings to explain why Plaintiff's concentration, persistence, or pace limitation does not translate into an RFC restriction. The Commissioner may be correct that evidence in the record does not support an RFC restriction based on this limitation. However, the ALJ did not provide the required explanation and analysis to facilitate judicial review of that determination, and this court "cannot fill in the blanks for the ALJ." *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017). Therefore, the undersigned recommends that the Commissioner's decision be remanded for further consideration of Plaintiff's limitations as to concentration, persistence or pace and that Plaintiff's remaining assignments of error regarding the RFC be overruled.

### B.    Credibility

Plaintiff also contends the ALJ insufficiently explained her finding that Plaintiff's testimony was not entirely credible. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 16.) Specifically, Plaintiff objects to the ALJ's use of "boilerplate" language regarding Plaintiff's credibility and her related failure to "summarize the medical evidence in the record" after the "boilerplate." (*Id.* at 18.) The ALJ analyzed and explained the medical evidence of record that impugns Plaintiff's credibility at different points in her opinion, and therefore, the undersigned recommends that this assignment of error be overruled.

Plaintiff is correct that SSR 96–7p requires the ALJ to state reasons supported by substantial evidence for discrediting a claimant's statements about her symptoms. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 16.) Those reasons, however, are not required to

appear in a particular sequence in the ALJ's opinion. Here, the ALJ discussed the evidence related to various impairments at different points in her opinion, and these discussions adequately explain the reasons for the credibility findings. Specifically, the ALJ addressed Plaintiff's credibility regarding (1) back and leg pain (R. 37–38); (2) seizure disorder, lupus, tachycardia, history of pulmonary embolism, asthma, and diabetes (R. 41); mental health conditions, viz. depression, anxiety, and post-traumatic stress disorder (R.43); migraine headaches (R. 43); and leg atrophy (R. 43). Each of these sections summarizes evidence in the record that the ALJ believed undermines Plaintiff's testimony regarding the severity of her symptoms and elucidates how the ALJ interpreted that evidence. Therefore, the ALJ's credibility finding is supported by substantial evidence and adequate explanation. Accordingly, this assignment of error should be overruled.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #16] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #20] be DENIED, and the Commissioner's decision be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **June 19, 2017**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and

Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 5th day of June 2017.

KIMBERLY A. SWANK
United States Magistrate Judge